GRIFFIS, P.J.,
SPECIALLY CONCURRING:
¶ 131. I take issue with the majority’s legal analysis in Issue I. The majority’s decision effectively changes the Mississippi Rules of Evidence. The taped statement is clearly and unequivocally hearsay, and no hearsay exception will allow the statement to be admitted. The impeachment rules do not trump the hearsay rules. As a result, I respectfully disagree with the majority’s analysis of this issue, but I join the result.

Whether the trial court erred in allowing the State to treat its own witness as hostile and establish its case through impeached testimony.

¶ 132. In this issue, Pustay claims that it was error for the trial court to admit Karen’s recorded statement as part of the State’s impeachment of her testimony. The majority determines “that Karen’s recorded statements to police officers were admissible because they were relevant to her claim that her prior statements were made under duress or coerced.” I do not follow the majority’s analysis. There is a difference in allowing the prior statement to be used for impeachment and allowing it to be admitted into evidence.
¶ 133. The State called Karen to testify during the its case-in-chief and expected her to testify that Pustay admitted that he had molested and sexually battered Jane. She did not testify consistent with this expectation. The State then proceeded to impeach her testimony. First, the State impeached her when she admitted that she had previously given a statement that was inconsistent with her testimony at trial. Second, the State impeached her when it used the transcript of her interrogation and asked her to admit that she had previously testified inconsistent with her trial testimony. Third, the State was allowed to impeach Karen’s trial testimony when the trial court allowed the redacted audio recordings of the interrogations into evidence. I am of the opinion that the trial *358 court was incorrect in allowing the audio recordings- to be admitted into evidence.
¶ 134. Under Mississippi Rule of Evidence 613(a), a witness may be impeached by reading a prior inconsistent statement to the witness and asking the witness whether the statement -accurately reflects what was said on the prior occasion, Johnson v. State, 905 So.2d 1209, 1212 (¶ 20) (Miss.2005). However, a party may never use his witness’s prior statement in the “guise of impeachment for the primary purpose of placing before the jury substantive evidence^] which is not otherwise admissible,” in order to avoid the hearsay rule. Flowers v. State, 773 So.2d 309, 326 (¶ 58) (Miss.2000).
¶ 135. Karen clearly testified that she had given two different versions of whether Pustay had admitted to molesting Jane. Her admission was proper impeachment under Mississippi Rules of Evidence 607 and 613. The trial judge was even concerned about her admission of perjury. The judge stopped the examination and told Karen that she could be prosecuted for perjury and advised her of her constitutional rights to counsel and to remain silent.
' ¶136. Despite this admonition, Karen’s testimony continued:
Q. Ma’am, isn’t it true that he admitted to you he was having sex‘with your daughter?
A. No.
' Q. Ma’am, I’m referring to—
A. I know the statement.
THE COURT: Just a minute. Ms. Pus-tay, let him finish his question, . please.
[WITNESS]: I don’t want to read any more from the statement.
THE COURT: You don’t have that option, ma’am.
[WITNESS]: It’s not true.
THE COURT: Answer his -questions, please.
Q, What did you say when the officer said, “Did he admit to the first time?’’ It’s right here, ma’am. ■ You can read that to the jury.
A. I know I said that, but it’s not true.
Q. Ladies and gentlemen—or, ma’am, tell the jury what you told the police officers.
A. (Reading) Yeah. I think he said he did molest her. He rubbed on her, is what he told me. I said it’s not true.
Q. That’s not what you said at that time, ma’am. Read your transcript to the jury.
[[Image here]]
A. (Reading) Yeah. I think he did say he did molest her. Rubbed on her, is what he told me.
Q. Ma’am, isn’t it true you said, “He said he did molest her. He rubbed on her, is what he told me?”
[[Image here]]
A. I just told you I lied. That statement is mostly all a lie.-1 was upset. I was scared. I wanted out of there. Just made me believe if I supported her, they’d let me go home.
¶ 137. Then, the State used Officer Pul-len to sponsor the audio recording of Karen’s first interrogation. Pustay’s counsel objected on the grounds of foundation, hearsay, and relevance in addition to his continuing objections to the State’s improper impeachment. The trial court responded, “What hearsay? This is a taped statement between you, Officer Pullen and ■Ms. Pustay.” The State did not offer, and the trial court judge did not ask for, an exception to the hearsay rule that would permit an out-of-court statement by a non-party witness to be admitted. Also, the trial court did not find that it was not offered to prove the truth of the matter asserted.
*359 ¶ 138. The majority does not address this issue. Indeed, the trial court’s decision that the taped statement was not hearsay was incorrect. Mississippi Rule of Evidence 801(c) provides that “ ‘[hjearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Karen’s taped statements were clearly within this definition; Therefore, the trial court needed to find that the taped statement was either non-hearsay under the definition of Rule 801(d) or an exception to the hearsay rule under Rules 803 or 804 before the statement could be played for the .jury. The trial court judge listened to the tape, then stated: ■
This tape, the portion that I just heard with the redaction that I’ve ordered, is what I’m going to allow on the issue of impeach[ment], not only impeaching Ms. Pustay’s statement, but also as to the issue as to whether the statement was coerced or forced or whether she gave it under duress. It’s admissible and probative and relevant for that purpose.
¶ 139. The State then offered the audio recording of the second interrogation. The trial court judge also admitted it into evidence with similar redactions.
¶140. Both of these audio recordings were hearsay. The impeachment rules do not allow for the admission into evidence of a hearsay statement/ for the purpose of impeachment or otherwise, without the statements falling within the definition of non-hearsay under Rule 801(d) or an appropriate exception under Rules 803 or 804. Tlie trial court was in error to admit the taped statements. without a . hearsay exception.
¶ 141. However, I do not find this error to be reversible error. The trial court judge did give a limiting instruction to the jury:
The Court instructs the jury that the taped statement entered into evidence of Karen Pustay may be used for the limited purpose of considering the truthfulness of Karen Pustay’s in-court testimony and not for the substance of her out-of-court statement.
The trial judge asked Pustay’s attorney to draft a limiting instruction. Therefore, .it was Pustay’s obligation to proffer a limiting instruction if he wanted one. Pustay’s attorney did not have a limiting instruction ready at the jury instruction conference, so the State submitted one. The limiting instruction used was not thé best instruction that could have been prepared, but Pus-tay’s attorney did not object to it. Therefore, the language suggested by Pustay in this appeal could have been worded better, but I am not of the opinion that the trial judge committed reversible error since Pustay had the opportunity to offer a different instruction.
¶ 142. For these reasons, I join the majority opinion but write separately to address my different opinion as to the legal analysis on the , admission' of the taped statements in Issue I.
IRVING, P.J., AND FAIR, J., JOIN THIS OPINION; -ISHEE AND JAMES, JJ„ JOIN THIS OPINION IN PART.